**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 12-cv-01223-REB-MEH

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation, as
Subrogee of Bison Ridge, LLC, and
BISON RIDGE, LLC, a Colorado limited liability company

      Plaintiffs,

v.

ZURICH AMERICAN INSURANCE COMPANY, an Illinois corporation, and
AMERICAN ZURICH INSURANCE COMPANY, an Illinois corporation,

      Defendants.

---

**AMERICAN ZURICH INSURANCE COMPANY'S AND
ZURICH AMERICAN INSURANCE COMPANY'S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 74)**

---

Defendants, American Zurich Insurance Company ("AZIC") and Zurich American

Insurance Company ("ZAIC") (collectively "Zurich"), by and through undersigned

counsel, submit their Response to Plaintiffs' Motion for Summary Judgment ("Motion")

(Doc. No. 74) and ask the Court to deny Plaintiffs' Motion.

## I.    INTRODUCTION

Plaintiffs, American Family Mutual Insurance Company ("American Family") and

Bison Ridge, LLC ("Bison Ridge") (collectively "Plaintiffs"), ask the Court to enter

summary judgment and hold, as a matter of law, that Zurich, under the commercial

general liability policies issued to Hall Irwin, Inc. ("Hall Irwin"), is obligated to pay 100%

of Bison Ridge's defense fees and costs and 100% of Bison Ridge's indemnity in four

underlying lawsuits – *Hartman*, *Lauro*, *Stickler* and *McWilliams*.  Summary judgment is a drastic remedy – to be entered only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Plaintiffs have not and cannot support their request for summary judgment.

Zurich agreed to defend Bison Ridge in the *Hartman*, *Lauro* and *Stickler* lawsuits under a reservation of rights, but American Family also agreed to defend Bison Ridge. Two carriers can and, as here, do have a duty to defend one insured; a complaint can and, as here, does trigger coverage under two different sets of policies.  Thus, both carriers have a duty to defend.

While American Family argues, without explanation, that its policies are excess and it had no duty to defend its named insured, Bison Ridge, the American Family policies are only excess to the limited coverage Zurich provides to Bison Ridge as an additional insured pursuant to the additional insured endorsements on the Zurich policies.  American Family provides primary coverage to Bison Ridge for all allegations that are not solely attributable to the work, negligence, acts or omissions of Hall Irwin.

With respect to *McWilliams*, Zurich has no obligation to defend Bison Ridge in the *McWilliams* matter because the *McWilliams* Complaint does not allege "property damage" caused by an "occurrence" – just as American Family concluded.  The *McWilliams* Complaint simply does not set forth any damages within the scope of coverage provided by the Zurich policies.

Plaintiffs not only seek reimbursement of defense costs but also indemnification for all of the amounts paid to settle the four underlying lawsuits.  To support their claim

for indemnity, Plaintiffs submitted unverified reports, which cannot support summary judgment. Even if allowed, Plaintiffs' reports are replete with information and opinions that Bison Ridge's liability flows from numerous other parties besides Hall Irwin, including the engineers utilized and/or retained by Bison Ridge for the Bison Ridge Project. Thus, at a minimum, outstanding issues of fact prelude summary judgment on the indemnity issue.

Accordingly, Plaintiffs' Motion should be denied in its entirety.

## II.  RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS

Zurich disputes Plaintiffs' Statement of Material Facts as follows:

4.  Plaintiffs failed to accurately describe the coverage provided by the various additional insured endorsements in the AZIC policies. Endorsement CG 20 33 10 01 states, in pertinent part:

> Section II – Who Is An Insured is amended to include as an insured any person or organization for whom you are performing operations when you and such person have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations for that insured. A person's or organization's status as an insured under this endorsement end when your operations for that insured are completed. Motion, Ex. 5, p. Z000341; Ex. 6, p. Z000463.

> Endorsement CG 20 37 10 01 states, in pertinent part:

> Section II – Who Is An Insured is amended to include the person or organization show in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard". Motion, Ex. 5, p. Z000342; Ex. 6, p. Z000464.

5.     Plaintiffs failed to accurately describe the coverage provided by the various additional insured endorsements in the ZAIC policies.   Endorsement U-GL-1175-A CW (9/03) states, in pertinent part:

B.     The insurance provided to the additional insured applies only to "bodily injury", "property damage" or "personal and advertising injury" covered under Section I, Coverage A., BODILY INJURY AND PROPERTY DAMAGE LABILITY and Coverage B., PERSONAL AND ADVERTISING INJURY LIABILITY, but only if:

1.     The "bodily injury" or "property damage" results from your negligence; and

2.     The "bodily injury", "property damage" or "personal and advertising injury" results directly from:

a.     Your ongoing operations; or

b.     "Your work" completed as included in the "products-completed operations hazard", performed for the additional insured, which is the subject of the written contract or written agreement.

C.     However, regardless of the provisions of paragraph A. and B. above:

1.     We will not extend any insurance coverage to any additional insured personal or organization:
                                        ***
b.     That is any broader coverage than you are required to provide to the additional insured person or organization in the written contract or agreement; and….
                                        ***
D.     The insurance provided to the additional insured person or organization does not apply to:

1.     "Bodily injury", "property damage" or "personal and advertising injury" that results solely from negligence of the additional insured; or

2.     "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render

4

any professional architectural, engineering or surveying services, including:

> a.    The preparing, approving or failing to prepare or approve maps, show drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

> b.    Supervisory, inspection, architectural or engineering activities.

***

F.    The insurance provided by this endorsement is primary insurance and we will not seek contribution from any other insurance available to any additional insured person or organization unless the other insurance is provided by a contractor other than you for the same operations and job location.   Then, we will share with that other insurance by the method described in paragraph 4.c. of SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS.  Motion, Ex. 7, p. Z000567-568; Ex. 8, p. Z000706-707; and Ex. 9, p. Z000849-850.

Endorsement U-GL-1175-B CW (3/2007) states, in pertinent part:

B.    The insurance provided to the additional insured person or organization applies only to "bodily injury", "property damage" or "personal and advertising injury" covered under SECTION I – Coverage A – Bodily Injury And Property Damage Liability and Section I – Coverage B – Personal and Advertising Injury, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

> 1.    Your acts or omissions; or

> 2.    The acts or omissions of those acting on your behalf, and resulting directly from:

>> a.    Your ongoing operations performed for the additional insured, which is the subject of the written contract or written agreement; or
>> b.    "Your work" completed as included in the "products-completed operations hazard", performed for the additional insured, which is the subject of the written contract or written agreement.

5

C. However, regardless of the provisions of paragraph A. and B. above:

  1. We will not extend any insurance coverage to any additional insured personal or organization:

   ***

   b. That is any broader coverage than you are required to provide to the additional insured person or organization in the written contract or agreement; and….

   ***

D. The insurance provided to the additional insured person or organization does not apply to:

  1. "Bodily injury", "property damage" or "personal and advertising injury" that results solely from negligence of the additional insured; or

  2. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render any professional architectural, engineering or surveying services, including:

   a. The preparing, approving or failing to prepare or approve maps, show drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

   b. Supervisory, inspection, architectural or engineering activities.

   ***

F. For the coverage provided by this endorsement:

  1. The following paragraph is added to Paragraph 4.a. of the Other Insurance Condition of Section IV Commercial General Liability Condition:

The insurance is primary insurance as respects our coverage is the additional insured person or organization, where the written contract or written agreement requires that this insurance be primary and non-contributory.   In that event, we will not seek contribution from any other insurance policy available to the additional insured on which the additional insured person or organization is a Named Insured.   Ex. 10, Motion, pp. Z001007-1008.

7.      American Family failed to provide proof of the payments allegedly made.

8.      Bison Ridge's defense counsel, Kathy Chaney, tendered the *Stickler* lawsuit to Flood & Peterson on May 13, 2010, not to Zurich.  Motion, Ex. 13.

9.      Zurich offered to pay what it believed was its pro-rata share of the defense fees and costs, which American Family rejected.

11.      American Family failed to provide proof of the payments allegedly made.

12.      Bison Ridge's defense counsel, Kathy Chaney, tendered the *Hartman* lawsuit to Flood & Peterson on May 13, 2010, not to Zurich.  Motion, Ex. 13.

13.      Zurich offered to pay what it believed was its pro-rata share of the defense fees and costs, which American Family rejected.

15.      American Family failed to provide proof of the payments allegedly made.

### III.      STATEMENT OF ADDITIONAL, MATERIAL FACTS

1.      The Independent Contractor Agreement did not require Hall Irwin to obtain primary and non-contributory insurance coverage for Bison Ridge.  Motion, Ex. 4.

2.      The allegations in the Hartmans' Second Amended Complaint include:

- Bison Ridge was the developer of the subdivision where the Hartmans' home is located.  Motion, Ex. 15  ¶8.

- Bison Ridge engaged Terracon.  *Id.* at ¶¶ 8 and 43.

- Terracon prepared a Foundation Plan for the Hartmans' house.  *Id.* at ¶ 9

- Terracon's Foundation Plan was inadequate and Terracon's failure to properly design the foundation caused damage to the Hartmans' house. *Id.* at ¶¶ 19-22.

- The compaction, overlot grading and other engineering work performed by Terracon was insufficient and substandard. *Id.* at ¶ 47

- Bison Ridge had a duty to import structural fill, which it breached.  *Id.* at ¶¶ 48 and 50.

- Bison Ridge had a duty to the Hartmans, which it breached causing them damages.  *Id.*

3.     The allegations in the *Stickler* Second Amended Complaint and Jury Demand include:

- Bison Ridge was the developer of the subdivision where Stickler's home is located.  Motion, Ex. 11, ¶ 11.

- Bison Ridge sold the lot upon which the Stickler house is located.  *Id.*

- Bison Ridge had a duty to import structural fill, and Bison Ridge's failure to import structural fill caused damage to the Stickler's house.  *Id.* at ¶ 34.

- The compaction, overlot grading and other engineering work Bison Ridge had performed was inadequate, substandard and insufficient.  *Id.* at ¶ 35.

4.     The allegations in the *Lauro* Complaint and Jury Demand include:

- Bison Ridge was the developer of the subdivision where the Lauros' house is located.  Motion, Ex. 19 ¶ 9.

- Bison Ridge sold the lot upon which the Lauros' house is located.  Id.

- Bison Ridge had a duty to import structural fill, and Bison Ridge's failure to import structural fill caused damage to the Stickler's house.  *Id.* at ¶ 32.

- The compaction, overlot grading and other engineering work Bison Ridge had performed was inadequate, substandard and insufficient. *Id.* at ¶ 33.

5.     The allegations in the *McWilliams* Amended Complaint and Jury Demand include:

- Bison Ridge sold the lot to McMilliams. Motion, Ex. 22, ¶ 4.

- Bison Ridge represented the lot was "permit ready". *Id.*

- McWilliams purchased the lot based upon representations from Bison Ridge that the lot was suitable for construction. *Id.* at ¶ 11.

- The lot was not suitable for construction or "permit ready". *Id.* at ¶¶ 16 and 17.

- McWilliams sought damages for rescission of the contract and breach of contract. *Id.* at ¶¶ 9-19.

6.     The damages alleged in the Hartman and Lauro lawsuits arose from or resulted directly from engineering deficiencies, not Hall Irwin's work, acts, omissions or negligence. Ex. A, Affidavit of Alan Lisowy and attached Hartman and Lauro Reports.

7.     Bison Ridge sued entities, other than Hall Irwin, because it believed others were also responsible for the damages alleged in the underlying suits. Ex. B, Deposition of Gary Hoover, p. 51, ll. 21- p. 52, ll. 2 and p. 60, ll. 21-25; Ex. C, Deposition of Gary Berger, p. 30, ll. 4-10, p. 34, ll. 15-19, p. 39, ll. 2-5, p. 42, ll. 24 – p. 43, ll. 6.

<u>IV.    ARGUMENT</u>

**A.    American Family Does Not Only Provide Excess Coverage to Bison Ridge.**

Plaintiffs argue, without explanation, that American Family's policies provide only excess coverage to Bison Ridge, and that "[b]ecause they are excess, American Family's policies do not provide a duty to defend."  Motion, p. 29.  This argument is flawed and contrary to Colorado law and the specific language in the American Family and Zurich policies.  Simply because Zurich has a duty to defend does not eliminate American Family's duty to defend or make the American Family policies excess.

**1.    Other Insurance Clauses Apply Only to the Extent There is Concurrent Coverage.**

American Family may point to its Other Insurance clause to support its position. Other Insurance clauses, however, are only relevant to the extent there is concurrent coverage among policies.  Thus, American Family's Other Insurance clause would apply only to the extent the Zurich and American Family policies provide concurrent coverage.

Colorado courts have discussed and interpreted various other insurance clauses. As noted in *National Cas. Co. v. Great Southwest Fire Ins. Co.*, 833 P.2d 741, 748 (Colo. 1992), "the other insurance clause provides for contribution in the event that other valid and collectible insurance applies on the same basis."  Thus, a court need only look to the other insurance clauses if two or more policies cover the same interest against same risk during the same period.   *Id.; see also Wentzvill Park Associates v. American Cas. Ins. Co. of Reading, Pa.*, 263 S.W. 3d 736, 740 (Mo. App. 2008); *Consolidated Edison Co. of New York v. Allstate Ins. Co.*, 774 N.E. 2d 694 (N.Y. App.

2002); *Continental Cas. Co. v. Coregis Ins. Co.*, 738 N.E. 2d 509, 521-522 (Ill. App. 2000).

As discussed below, the American Family and Zurich policies do not fully overlap.  Bison Ridge is covered under the American Family policies for damages not covered under the Zurich policies.

**2.      The American Family Policies Are Excess Only to the Narrow Coverage Provided to Bison Ridge as an Additional Insured Under the Zurich Policies.**

The relevant Other Insurance clause in the American Family policies states as follows:

4.      Other Insurance

    b.      Excess Insurance

        This insurance is excess over:

> (2)      Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.  Motion, Ex. 1, CGL Coverage Form at p. 7 at ¶ 4(b)(2); Motion, Ex. 2, CGL Coverage Form, pp. 8-9 at ¶ 4(b)(2).

According to this language, the American Family policies are excess only to the primary insurance provided to Bison Ridge as an additional insured.  This other insurance provision does not make American Family excess to every other coverage – just excess over the specific coverage provided to Bison Ridge as an additional insured.

Pursuant to the additional insured endorsements on the Zurich policies, Bison Ridge is covered under the Zurich policies for liability arising out of Hall Irwin's work or liability resulting from Hall Irwin's negligence – nothing more.  Motion, Ex. 5, at

Z000342; Ex. 6 at Z000464; Ex. 7 at Z000567-568; Ex. 8, at Z000706-707; Ex. 9 at Z000849-850; and Ex. 10 at Z001007-1008.   Thus, the American Family policies are only excess to the AZIC policies for the liability arising from Hall Irwin's work, and are only excess to the ZAIC policies for property damage that results from Hall Irwin's negligence and resulting directly from Hall Irwin's work, acts, or omissions – which is the <u>only</u> coverage provided by Zurich pursuant to the additional insured endorsements.

The American Family policies may be excess to the limited coverage provided by the Zurich policies, but the American Family policies provide coverage that is well beyond the scope of the coverage provided by the additional insured endorsements in the Zurich policies.   For example, the ZAIC policies exclude coverage for Bison Ridge's sole negligence as well as its supervisory or engineering services or activities.   Motion, Ex. 7, pp. Z000567-568; Z000600-601; Ex. 8, pp. Z000706-707, Z000745; Ex. 9, pp. Z000849-850, Z000886; Ex. 10, pp. Z001007-1008, Z001043.   The American Family policies do not exclude coverage for Bison Ridge's sole negligence or its supervisory, professional or engineering services.    Motion, Exs. 1, 2 and 3.

Thus, there can be no question Bison Ridge is covered under the American Family policies.

### 3.    The Zurich Policies Do Not Provide Primary and Non-Contributory Coverage.

American Family also seems to contend that the Zurich policies provide primary and non-contributory coverage to Bison Ridge, which makes the American Family policies excess.  Such a position is not accurate.

The AZIC policies do not extend primary and non-contributory coverage. Motion, Ex. 5, at Z000342; Ex. 6 at Z000464. The ZAIC policies only extend such coverage when required by written contract. Motion, Ex. 7 at Z000567-568; Ex. 8, at Z000706-707; Ex. 9 at Z000849-850; and Ex. 10 at Z001007-1008. Additionally, the ZAIC endorsements specifically state:

> We will not extend any insurance coverage to any additional insured person or organization:
>
> b. That is any broader coverage than you are required to provide to the additional insured person or organization in the written contract or agreement.... *Id.*

Here, the Independent Subcontractor Agreement did not require Hall Irwin to obtain primary and non-contributory coverage for Bison Ridge. Motion, Ex. 4.

Pursuant to the language of the additional insured endorsements, ZAIC will not extend coverage to any additional insured any broader than that required by the subcontract. The subcontract did not require Hall Irwin to provide primary and non-contributory coverage. Thus, the ZAIC policies do not extend such coverage to Bison Ridge.

**B. Zurich and American Family Have a Duty to Defend Bison Ridge in the *Hartman, Lauro* and *Stickler* Lawsuits.**

Zurich does not dispute the extensive case law cited by Plaintiffs regarding the duty to defend, but such case law applies equally to support the conclusion that American Family has a duty to defend Bison Ridge. American Family cannot prove that the allegations fall exclusively outside the coverage afforded to Bison Ridge under its policies. Thus, under Colorado law, American Family must defend, and the defense

costs should be allocated pro-rata between American Family and Zurich. *Signature Dev. Companies, Inc. v. Royal Ins. Co. of America*, 230 F.3d 1215 (10th Cir. 2000).

While the Zurich policies include various additional insured endorsements, all six Zurich additional insured endorsements provide limited coverage to Bison Ridge – for liability arising out of Hall Irwin's work or for property damage that results from Hall Irwin's negligence <u>and</u> resulting directly from Hall Irwin's work, acts or omissions. Motion, Ex. 5, at Z000342; Ex. 6 at Z000464; Ex. 7 at Z000567-568; Ex. 8, at Z000706-707; Ex. 9 at Z000849-850; and Ex. 10 at Z001007-1008.

The Zurich policies do not provide coverage to Bison Ridge for Bison Ridge's own independent negligence or any other allegations in the *Hartman*, *Lauro* and *Stickler* Complaints that go beyond damage arising out of Hall Irwin's work (under the AZIC policies) or damage that results from Hall Irwin's negligence and directly resulting from Hall Irwin's work, acts, or omissions (under the ZAIC policies).  The *Hartman*, *Lauro* and *Stickler* Complaints include a number of allegations against various defendants – many of which have nothing to do with Hall Irwin's scope of work, which is set forth in the Independent Subcontract Agreement between Bison Ridge and Hall Irwin.   Ex. 4, Motion, § 1.

In contrast to the coverage provided to Bison Ridge under the Zurich policies, the coverage provided to Bison Ridge under the American Family policies is far broader. Essentially, the American Family policies provide coverage for everything else not covered by Zurich.  The Insuring Agreement of Coverage A in the American Family policies state:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.  Motion, Ex. 1, CGL Coverage Form, p. 1 at ¶ 1(a); Ex. 2, Motion, CGL Coverage Form, p. 1 at ¶ 1(a).

The Insuring Agreement obligates American Family to pay for all damages to which the insurance applies.  *Id.*  By their terms, the American Family policies apply to "property damage" caused by an "occurrence" during the policy periods.  *Id.*   The American Family policies do not exclude coverage for Bison Ridge's work done on its behalf by a contractor or subcontractor and any and all resulting damage.  Motion, Ex. 1, CGL Coverage Form, p. 3 at ¶ 2(k); Ex. 2, CGL Coverage Form, p. 3 at ¶ 2(k).  These provisions obligate American Family to defend Bison Ridge against the broad spectrum of allegations made in the *Hartman*, *Lauro* and *Stickler* Complaints regarding claims <u>other than those that potentially implicate Hall Irwin's work</u>.

The *Hartman*, *Lauro* and *Stickler* Complaints are replete with allegations of damages resulting from the work and/or negligence of parties other than Hall Irwin and, specifically, allegations that damage arose from engineering work performed by Bison Ridge or that Bison Ridge had performed (on its behalf) or utilized.  The *Hartman, Lauro* and *Stickler* Complaints include very specific allegations against Bison Ridge for engineering and supervisory activities, which is outside of the coverage afforded to Bison Ridge as an additional insured under the Zurich policies:

- Bison Ridge had a duty to import structural fill, which it did not do; Motion, Ex. 16, ¶¶ 42 and 48; Ex. 11, ¶¶ 32 and 36; Ex. 19, ¶¶ 30 and 34;

- Bison Ridge engaged Terracon to perform engineering work; Motion, Ex. 16, ¶ 8;

- Terracon's engineering work was deficient; Motion, Ex. 16, ¶¶ 18-22; and

- The engineering work Bison Ridge had performed was deficient and caused damages; Motion, Ex. 11, ¶ 35; Ex. 19, ¶ 33.

These allegations, among others, trigger American Family's duty to defend, which American Family cannot avoid simply because another carrier also has a duty to defend.  Thus, while Zurich has a duty to defend Bison Ridge in the *Stickler*, *Hartman* and *Lauro*, so does American Family.

**C.    Zurich Does Not Have a Duty to Defend Bison Ridge in *McWilliams.***

Plaintiffs allege that Zurich had a duty to defend Bison Ridge in *McWilliams* because the Complaint "alleges loss of use," and that Zurich's policies define property damage "to include loss of use of tangible property that is not physically injured." Motion, p. 22.  Plaintiffs, however, fail to explain how the *McWilliams* Complaint alleges loss of use, and fail to address the fact that the *McWilliams* Complaint does not allege an "occurrence" as defined under the Zurich policies and Colorado law.

Pursuant to the Insuring Agreement of the Zurich policies, Zurich covers monies the insured becomes "legally obligated to pay" because of "property damage" caused by an "occurrence."  Motion, Ex. 5, p. Z000322; Ex. 6, p. Z000446; Ex. 7, p. Z000574; Ex. 8, p. Z000717; Ex. 9 p. Z000861; Ex. 10, Z001020.   Under the Zurich policies, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Motion, Ex. 5, p. Z000335; Ex. 6, p. Z000459; Ex. 7, p. Z000587; Ex. 8, p. Z000730; Ex. 9, p. Z000874; Ex. 10, p. Z001033.

In the *McWilliams* Complaint, the McWilliams allege that Bison Ridge misled them during contract negotiations, including that:

10. The McWilliams purchased the lot with the understanding that it was suitable for construction and building a residence.  All representations made by Bison Ridge, through its agents and representatives, led the McWilliams to believe that the lot was suitable for construction and building a residence.

11.    The suitability of the lot for the construction of a residence is a crucial term and condition of the parties' Contract, both implicitly and explicitly.

12.    The discovery by the McWilliams that the lot is not suitable for construction and that the lot is not saleable is contrary to the intent of the Contract.  Had the McWilliams know that the lot was not suitable for the construction of a residence, they would not have entered into the Contract.  Motion, Ex. 22 ¶¶ 10-12.

The McWilliams demand rescission of the contract for Bison Ridge's alleged breach of the same.  Thus, the thrust of the allegations in the *McWilliams* Complaint pertain to the negotiations of a contract between Bison Ridge and the McWilliams.  It is well settled under Colorado law that allegations of breach of contract are not an "occurrence" under a commercial general liability policy.  *See, e.g.*, *Union Ins. Co. v. Hottenstein*, 83 P.3d 1196, 1201 (Colo. App. 2003).   Accordingly, the *McWilliams* Complaint does not allege an "occurrence" and Zurich has no duty to defend or indemnify Bison Ridge in the *McWilliams* matter.

Further, as indicated above, Zurich's obligations under its policies to provide coverage to Bison Ridge as an additional insured extend <u>only</u> to the allegations of liability or negligence resulting from Hall Irwin's work.   Again, the allegations in the *McWilliams* Complaint are <u>all</u> related to Bison Ridge's conduct, not Bison Ridge's work, and certainly not the work of Hall Irwin.  Thus, the allegations do not fall within the

scope of the coverage provided by Zurich to Bison Ridge, and Zurich has no duty to defend Bison Ridge as an additional insured in the *McWilliams* matter.

It should be noted that American Family denied Bison Ridge's tender of defense in the *McWilliams* matter on the same basis as Zurich – that there were no allegations of "property damage" caused by an "occurrence". Ex. B, Deposition of Gary Hoover, pp. 73, ll. 11- p. 74, ll. 11; Ex. C, Deposition of Gary Berger, p. 40, ll. 20 – p. 41, ll. 11. Thus, if Zurich has an obligation to defend Bison Ridge in the *McWilliams* matter, which Zurich disputes, so does American Family.

**D.   Zurich Has No Duty to Indemnify Bison Ridge, But at a Minimum, There Is a Genuine Issue of Material Fact, Which Precludes Summary Judgment.**

As noted in Plaintiffs' Motion, a determination of the duty to indemnify is based upon the full factual record, and indemnity flows from the nature of the ultimate verdict, judgment or settlement. *Employer's Fire Ins. Co. v. Western Guaranty Fund Service*, 924 P.2d 1107, 1110 (Colo. 1996)[1]. An insurer's duty to indemnify only arises when a policy actually covers a harm, which is "largely a question of fact". *Cotter v. American Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 830 (Colo. 2004). Thus, whether Zurich has an obligation to indemnify Bison Ridge as an additional insured is based not only on the allegations in the four underlying complaints and the provisions of the Zurich policies, but also on all facts and expert reports regarding the multiple causes of the damages alleged in the underlying lawsuits.

---

[1]In diversity cases, courts should apply the substantive law of the state. Thus, Colorado law applies to this dispute.

In connection therewith, Plaintiffs have the initial burden to prove Zurich has a duty to indemnify.  *Rodriguez v. Safeco Insurance Co.*, 821 P.2d 849, 853 (Colo. App. 1991).  If Plaintiffs meet their initial burden, the burden shifts to Zurich to establish the applicability of any exclusions.  *Id.*  Plaintiffs, however, have the ultimate burden of proving liability under the policies.  *Id.*  Plaintiffs also have the burden to prove there is no genuine issue of material fact.  Fed.R.Civ.P. 56(c).

Plaintiffs have not and cannot sustain their burden.

### 1.   Plaintiffs Impermissibly Rely Upon Unverified Reports.

Rule 56(e) requires an adverse party to respond "by affidavits or as otherwise provided in this rule" to demonstrate that a genuine issue exists for trial.  *Sofford v. Schindler Elevator Corporation*, 954 F.Supp. 1459, 1462 (D.Colo. 1997).  In *Sofford*, the court held that unsworn expert reports are not "competent evidence" for the court's consideration in ruling on the motion for summary judgment.  *Id.*  The court noted that the Tenth Circuit had not specifically addressed this issue but it "recognized that unverified reports may not be used to support factual determinations 'unless reduced to a form recognized by the rules.'"  *Id.* at 1463 (citing *Nordgren v. Hayward*, 638 F.2d 224, 226 (10th Cir. 1981)).

To support their Motion, Plaintiffs solely rely upon <u>unverified</u> reports, which cannot support summary judgment.

Further, Plaintiffs also rely on and attach as exhibits (to their Motion) unverified reports and documents from individuals who were not disclosed as experts in this matter.  For example, Plaintiffs attach a May 27, 2010 report generated by Larsen

Structural Design regarding the Stickler home (Motion, Ex. 24), as well as a July 30, 2012 report from Earth Engineering Consultants, Inc. regarding the McWilliams lot (Motion, Ex. 29).  Not only are these reports written by non-disclosed experts, they are also unverified and cannot be utilized to support summary judgment.

      **2.**      **Plaintiffs' Unverified Reports, Even If Allowed, Do Not Support a Duty to Indemnify Bison Ridge.**

As discussed above and pursuant to the additional insured endorsements on the Zurich policies, Zurich's indemnity obligations to Bison Ridge are limited to resulting damage arising out of Hall Irwin's work (under the AZIC policies) or damages resulting from Hall Irwin's negligence <u>and</u> directly resulting from Hall Irwin's work, acts or omissions (under the ZAIC policies).  Thus, in order to prevail on their Motion and on their contention that Zurich owes 100% indemnity to Bison Ridge for all four underlying lawsuits, the <u>facts</u> must illustrate that 100% of Bison Ridge's liability is a result of Hall Irwin's work or negligence.  Plain and simple, the facts clearly do not show this – even if Plaintiffs' unverified reports are utilized.

Initially, it is important to note that Plaintiffs did not disclose <u>any</u> experts as to the *Stickler* and *McWilliams* lawsuits.   Ex. D**,** Plaintiffs' Fed.R.Civ.P. 26(a)(2) Expert Disclosures.  Thus, American Family has no evidence (unverified reports or otherwise) that Bison Ridge's liability in the *Stickler* and *McWilliams* matters arose solely out of Hall Irwin's work or from Hall Irwin's negligence resulting from Hall Irwin's work or operations.  Plaintiffs have not even disclosed any witnesses (experts or otherwise) to support their argument that Zurich owes 100% of the indemnity in Stickler or McWilliams.  Without such facts, Plaintiffs' Motion must be denied.

Additionally, Hall Irwin is not the only party in play.  Bison Ridge, as the developer of the lots, is certainly accountable and liable for the actions of the engineers utilized and/or contracted with by Bison Ridge for the Bison Ridge Project – i.e., Terracon, SCA, TST and/or Shear, etc.  For example, Hartman alleged Bison Ridge retained Terracon as a subcontractor.  Motion, Ex. 16, ¶ 8.  And, the underlying plaintiffs alleged Bison Ridge was responsible for all of the engineering work it had performed and breached its own independent duty to import structural fill.  Motion, Ex. 11, ¶ 35; Ex. 19, ¶ 33; Ex. 16, ¶¶ 42 and 48; Ex. 11, ¶¶ 32 and 36; Ex. 19, ¶¶ 30 and 34;

Bison Ridge admits that it filed third-party complaints in all four underlying actions against parties other than Hall Irwin because Bison Ridge believed that those other parties had liability for the alleged damages, including Terracon, SCA, TST and the builder for each home.  Ex. B, Deposition of Gary Hoover, p. 51, ll. 21- p. 52, ll. 2 and p. 60, ll. 21-25; Ex. C, Deposition of Gary Berger, p. 30, ll. 4-10, p. 34, ll. 15-19, p. 39, ll. 2-5, p. 42, ll. 24 – p. 43, ll. 6.  And, there is no question Bison Ridge contracted with SCA and TST.  Ex. B, p. 11, ll. 23 - p. 12, ll. 2; Ex. C, p. 15, ll. 16-18.

Under Colorado law, Bison Ridge cannot engage independent contractors to perform and escape liability to the owner for work if the independent contractors are negligent; Bison Ridge remains liable to the owner.  *Simpson v. Digiallonardo*, 488 P.2d 208, 210 (Colo.App. 1971).  Thus, Bison Ridge is liable for work of the design professionals it retained, such as Terracon, SCA and TST (and potentially others).  Hall Irwin simply follows the plans from Bison Ridge's design professionals.

Further, Plaintiffs unverified expert reports do not identify what damages to the Hartman and Lauro homes, if any, flow from Hall Irwin's work, do not allocate damages specifically to Hall Irwin, and provide no cost of repair (allocated or otherwise). Without such evidence, there is no basis to hold Zurich liable.

Finally, Plaintiffs' own unverified reports are critical of the work of numerous other parties besides Hall Irwin regarding the Hartman and Lauro lots/homes:

> It is my opinion that the lot specific soils report performed by [Scott Cox & Associates (SCA)] did not adequately address the concern of the fill soils….This lot should have been addressed more specifically in the SCA report, and more stringent recommendations and expectations should have been explained in greater detail.  Motion, Ex. 24, pg. 4.

> Terracon fell below the standard of care by not completing a lot specific soils report for the Hartman lost that addressed the issue of the deep fill placed on Lot 92 (Hartman).  Motion, Ex. 25, pg. 2.

> Scott, Cox & Associates did not provide appropriate moisture control during overlot fill placement.  *Id.*

> SCA fell below the standard of care….I*d.* at pg. 3.

> Terracon fell below the standard of care….*Id.*

> …the lack of a site-specific subsurface investigation and geotechnical report played a significant role in leading to the distress of the residence by failing to identify the thick fill deposits at the site, as well as the settlement-prone clays under the fill.   This is a design-related issue.  Motion, Ex. 26, pg. 18.

> …the Developer [Bison Ridge] and Scott, Cox and Associates fell below the standard of care by not conducting an adequate number of field density tests during overlot fill placement, and by not extending their tests through the full depth of fill  Motion, Ex. 28, pg. 9

In sum, the damages in the underlying actions certainly cannot be <u>solely</u> attributable to the work, negligence, acts or omissions of Hall Irwin, as Plaintiffs

ludicrously argue with no justification.  Because there are outstanding issues of fact as to the cause of Bison Ridge's liability and damages in all four underlying lawsuits, the indemnity issue <u>cannot</u> be resolved via motion for summary judgment.[2]

### 3. Zurich's Expert Demonstrates a Genuine Issue of Material Fact, Precluding Summary Judgment.

Zurich's expert, Alan Lisowy of HP Geotech, authored expert reports in both the *Hartman* and *Lauro* matters.

As to *Hartman*, Mr. Lisowy finds that Hall Irwin performed its work in conjunction with the grading plans provided to it.  Specifically, Mr. Lisowy opines "that the placement of overlot grading fill by Hall Irwin met the project specifications and was typical for projects of this type."  Ex. A – 1, February 25, 2011 Hartman Report, p. 5.  Mr. Lisowy further opines that "overlot grading fill was placed and compacted [by Hall Irwin] in accordance with the Terracon compaction requirements."  *Id.*  Mr. Lisowy goes on to state that "Hall Irwin placed overlot grading fill in accordance with the project specifications,"  and that "Hall Irwin had no reason to believe that a lot specific geotechnical study would not be conducted for Lot 92 [Hartman lot]."  *Id.*  Mr. Lisowy further opines that Terracon, the geotechnical engineer utilized by Bison Ridge for the Bison Ridge Project, fell below the standard of care and was negligent.  Specifically, Mr. Lisowy states:

---

[2] It is notable that Bison Ridge, Hall Irwin and other parties all contributed to the settlement in the *Lauro* matter, and Bison Ridge executed a release agreement releasing Hall Irwin from all liability for Hall Irwin's work.  Bison Ridge cannot now seek further indemnity money from Hall Irwin based on the theory that all damages flowed from Hall Irwin's work.  Zurich does not attach the Bison Ridge/Hall Irwin settlement agreement as the specific terms and amounts are subject to a protective order in this matter.

> In lieu of a lot specific study, Terracon accepted a geotechnical study from an adjacent lot.  In doing so, it is our opinion that Terracon acted below the standard of care for the design of a single family residential foundation.  *Id.* at p. 6.

As to the Lauro home, Mr. Lisowy again opines that "the placement of overlot grading fill [by Hall Irwin] for the project generally met the Terracon specifications."  Ex. A – 2, March 19, 2012 Lauro Report, p. 6.  Terracon and/or Shear, as with the Hartman lot, did not conduct a lot specific geotechnical study for the Lauro lot, and Mr. Lisowy states "if a lot specific study had been conducted [by Terracon or Shear] for lot 90 [the Lauro lot], the damage that has occurred to the subject residence could have been avoided."  *Id.* at p. 8.

Thus, at a minimum, a question of fact remains as to what damages (Plaintiffs incurred) fall within the limited scope of coverage provided to Bison Ridge as an additional insured under the Zurich policies.

## V.   CONCLUSION

Plaintiffs' arguments that Zurich owes 100% of Bison Ridge's defense fees, costs and indemnity in the underlying actions fall flat.  As discussed herein, <u>both</u> Zurich and American Family have an obligation to defend Bison Ridge in the *Stickler*, *Lauro* and *Hartman* lawsuits, and American Family only provides excess coverage to the limited coverage Zurich provides Bison Ridge as an additional insured.  The underlying complaints coupled with the Zurich and American Family policy provisions clearly dictate this outcome.

As to the duty to indemnify, there is no basis to hold Zurich liable for indemnity, but at a minimum, there is a genuine issue of material fact, which precludes summary judgment.

Accordingly, Zurich respectfully requests this Court deny Plaintiffs' Motion in its entirety.

Respectfully submitted this 23 day of May, 2013.

*s/ Todd E. Jaworsky*
Jane E. Young
Todd E. Jaworsky
McElroy, Deutsch, Mulvaney & Carpenter, LLP
5600 Quebec Street, Suite 100C
P.O. Box 4467
Englewood, CO  80155-4467
Telephone:  (303) 293-8800
Facsimile:  (303) 839-0036
E-mail:  jyoung@mdmc-lawco.com
          tjaworksy@mdmc-lawco.com

*Attorneys for Defendant*s

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 23, 2013, a true and correct copy of the foregoing AMERICAN ZURICH INSURANCE COMPANY'S AND ZURICH AMERICAN INSURANCE COMPANY'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT was filed via the CM/ECF system and was served upon the following:

Jon F. Sands
Melissa C. Collins
Sweetbaum Sands Anderson PC
1125 Seventeenth Street, Suite 2100
Denver, CO 80202
Email: jsands@sweetbaumsands.com
      wstanton@sweetbaumsands.com
      mcollins@sweetbaumsands.com
*Attorneys for Plaintiffs*


     *s/ Todd E. Jaworsky*
     Jane E. Young
     Todd E. Jaworsky
     McElroy, Deutsch, Mulvaney & Carpenter, LLP
     5600 Quebec Street, Suite 100C
     P.O. Box 4467
     Englewood, CO  80155-4467
     Telephone:  (303) 293-8800
     Facsimile:  (303) 839-0036
     E-mail:     jyoung@mdmc-lawco.com
              tjaworsky@mdmc-lawco.com