IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-01223-REB-MEH

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation, as Subrogee of Bison Ridge, LLC,
BISON RIDGE, LLC, a Colorado limited liability company

    Plaintiffs,

v.

ZURICH AMERICAN INSURANCE COMPANY, an Illinois corporation,
NORTHERN INSURANCE COMPANY OF NEW YORK, a New York corporation,
AMERICAN ZURICH INSURANCE COMPANY, an Illinois corporation,

    Defendants.

_____

**REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DOC. 115]**
_____

    Plaintiffs, American Family Mutual Insurance Group and Bison Ridge, LLC by and through their attorneys, Sweetbaum Sands Anderson, PC, hereby reply to Defendants' response to Plaintiffs' Motion for Summary Judgment (Doc. No. 115) as follows:

### Introduction

    Throughout their brief, Defendants repeatedly state that Plaintiffs' positions are "without explanation." To the contrary, Plaintiffs positions are well supported by fact and the law as detailed in the motion for summary judgment and this reply.

    To avoid duplication of the briefing, Plaintiffs also incorporate by reference their response to Defendants' Motion for Partial Summary Judgment [Doc. 116].

**Argument**

A.   **Defendants Misapply the Contracts and Colorado law on the Duty to Defend**

After more than two years of denying a defense, Defendants finally conceded they owed Bison Ridge a defense in three out of the four lawsuits. Now, however, Defendants argue that they do not owe Bison Ridge a complete defense, which is a violation of an insurer's duty to defend in Colorado.

In its response on pages 10 through 15, Defendants argue that American Family's policies are not purely excess and American Family owes a pro rata share of Bison Ridge's defense based on two grounds: (1) the Defendants' policies provide limited coverage to Bison Ridge as an additional insured; and (2) the Defendants' policies do not provide primary and non-contributory coverage. Both grounds are misplaced.

With regard to the first ground, Defendants imply that even though they now acknowledge that they had a duty to defend, they did not have a duty to provide a complete defense as Bison Ridge was only an additional insured. This argument is at odds with long-standing black letter in Colorado regarding an insurer's duty to defend. If coverage potentially exists for only *part* of the claim or lawsuit, the insurance company must provide the insured with a defense for the *entire* action. **Blackhawk-Central Sanitation Dist. v. Am. Guar. & Liab. Ins. Co.**, 214 F.3d 1183, 1189 (10th Cir. 2000).

Defendants now admit that coverage potentially existed for part of three lawsuits (*Hartman, Stickler and Lauro)*. Under binding legal authority, Defendants were required to completely defend all three lawsuits – not just provide a defense for those allegations arising out of Hall Irwin's work

With regard to the second ground, instead of analyzing each of the different policy periods for primacy and excess issues, the Defendants' merely gloss over this issue on page 12 by incorrectly referring to the ZAIC policies and to the Independent Subcontractor Agreement.  The Defendants completely ignore the AZIC policies and also fail to acknowledge that ZAIC is the only carrier on the risk after April 15, 2006.  When the American Family policies are compared to the AZIC and ZAIC policies, it is evident that the three American Family policies only provide excess coverage.  Excess coverage was never triggered in any of the lawsuits, therefore requiring AZIC and ZAIC as the primary carriers on the risk to fully reimburse American Family.

As shown by this chart, except for a 3 ½ month period (January 1, 2003 through April 15, 2003), all three of American Family's policies overlap with the Defendants' policies:

| Insurer | Policy Period | Limits |
| --- | --- | --- |
| AZIC | 1/01/2003 to 1/01/2004 | $1,000,000 each occurrence |
| American Family | 4/15/2003 to 04/15/2004 | $1,000,000 each occurrence |
| AZIC | 12/31/2003 to 12/31/2004 | $1,000,000 each occurrence |
| American Family | 4/15/2004 to 4/15/2005 | $1,000,000 each occurrence |
| ZAIC | 12/31/2004 to 12/31/2005 | $1,000,000 each occurrence |
| American Family | 04/15/2005 to 04/15/2006 | $1,000,000 each occurrence |
| ZAIC | 12/31/2005 to 12/31/2006 | $1,000,000 each occurrence |
| ZAIC | 12/31/2006 to 12/31/2007 | $1,000,000 each occurrence |
| ZAIC | 12/31/2007 to 12/31/2008 | $1,000,000 each occurrence |

Hall-Irwin completed its grading work at Bison Ridge no later than October 14, 2003.  *See Plaintiffs' Motion for Summary Judgment, Order in Hartman v. Bison Ridge Regarding the Statute or Repose,* **Ex. 30** at p. 2.  Therefore, as a matter of law, the 3 ½ month period under American Family's first policy period is not implicated.

From April 15, 2003 to April 15, 2006, the American Family policies overlap with the AZIC and ZAIC policies. From April 16, 2006 through December 31, 2008, ZAIC is the only carrier on the risk. Therefore, the question becomes whether the American Family policies are co-primary or excess for the time period of April 15, 2003 to April 15, 2006.

### 1. January 1, 2003 to January 1, 2005

The AZIC policies specifically provide that they are primary coverage over other insurance unless the other insurance states it is also primary, *See Plaintiffs' Motion for Summary Judgment, **Ex. 5**, p. Z 000332 ¶ 4(a); **Ex. 6**, p. Z000584.*:

> **a. Primary Insurance**
>
> This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

The at-issue American Family policies state they are excess over any policy Bison Ridge is insured under pursuant to an additional insured endorsement:

> (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

Because the American Family policies are excess to AZIC's policies, it did not have a duty to defend for these two policy periods. The policies state: When this insurance is excess we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend against that "suit". *See Plaintiffs' Motion for Summary Judgment, **Ex. 1**, CGL Coverage Form, p. 7 at ¶ 4(b)(2); **Ex. 2**, CGL Coverage Form p. 8-9, ¶ 4(b)(2).* Accordingly, AZIC must reimburse American Family and Bison Ridge the $117,500 of indemnity payments allocated to these policy periods.

4

Further, because American Family did not owe a duty to defend in any policy period, it must be reimbursed in full for all of the defense costs and fees it incurred.

### 2.     January 1, 2005 to January 1, 2006

American Family's last policy goes out of force on April 15, 2006 but is included for analysis for the 2005 calendar year.  *See Plaintiffs' Motion for Summary Judgment,* ***Ex. 3****.*  The at-issue ZAIC policy provides for primary, non-contributing completed operations coverage, *see Plaintiffs' Motion for Summary Judgment,* ***Ex. 7*** at p. Z000568:

> F. The insurance provided by this endorsement is primary insurance and we will not seek contribution from any other insurance available to any additional insured person or organization unless the other insurance is provided by a contractor other than you for the same operations and job location. Then we will share with that other insurance by the method described in paragraph 4.c. of SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS.

The at-issue American Family policy states it is excess over any policy Bison Ridge is insured under pursuant to an additional insured endorsement, *see Plaintiffs' Motion for Summary Judgment,* ***Ex. 3***, CGL Coverage Form, p. 8 at ¶ 4(b)(2):

> (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

Because the American Family policies are excess to AZIC's policies, it did not have a duty to defend for these two policy periods.  The policies state:  When this insurance is excess we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend against that "suit".  ***Ex. 1***, CGL Coverage Form, p. 7 at ¶ 4(b)(2); ***Ex. 2***, CGL Coverage Form p. 8-9, ¶ 4(b)(2).  Accordingly, AZIC must reimburse American Family and Bison Ridge the $117,500 of indemnity payments allocated to these policy periods.  Further, because American Family did not owe a duty

5

to defend in any policy period, it must be reimbursed in full for all of the defense costs and fees it incurred.

### 3. January 1, 2006 to December 31, 2008

Only ZAIC has coverage for these three years under the polices marked as *Exhibits 8*, *9*, and *10* to *Plaintiffs' Motion for Summary Judgment.* Because it does not have coverage under these three years, American Family did not owe a defense for these policy periods.

### B. Zurich Had a Duty to Defend Bison Ridge in *McWilliams*

Zurich argues that "the thrust of the allegations in the McWilliams Complaint pertain to the negotiations of a contract between Bison Ridge and the McWilliams." *Defendants' Response* Brief, p. 17. However, the "thrust of the allegations" is not the standard on which to determine whether Zurich owed a defense. Colorado courts have held that an underlying complaint's factual allegations, not its legal claims or conclusions, determine an insurer's defense obligations. *See, e.g., **Thompson v. Maryland Cas. Co.**,* 84 P.3d 496, 502 (Colo. 2004) ("To analyze the insurer's duty to defend, we consider whether the factual allegations in the underlying complaint trigger coverage under an insurance policy's terms."); ***Gerrity Co., Inc. v. CIGNA Prop. & Cas. Ins. Co.**,* 860 P.2d 606, 607 (Colo. App. 1993) ("It is, however, the factual allegations in the complaint, not the legal claims, that determine an insurer's duty [to defend.]".

The factual allegations alleged in the *McWilliams* Complaint include:

4. The McWilliams and Bison Ridge entered into a Contract to Buy and Sell Real Estate dated May 22, 2004. Pursuant to the Contract, Bison Ridge was to sell the McWilliams a lot that was "permit ready." The McWilliams intended to build a custom home on the lot, and were assured by Bison Ridge and/or its agents

> and representatives that the lot was suitable for building. *See Plaintiffs' Motion for Summary Judgement, Exh. 22* at ¶ 4.

6. The McWilliams later built their home elsewhere, and elected to sell the lot. *Id.* at ¶ 6.

7. On or about June of 2010, the McWilliams discovered that the homes built on adjacent lots were experiencing distress associated with settlement and other foundation movement. It was further discovered that the soils on the McWilliams lot and the adjacent lots were unstable. As a result, the McWilliams' were advised that their lot was not suitable for building and, accordingly, was not saleable. *Id.* at ¶ 7.

All of the at-issue policies define "property damage" as follows:

> "Property damage" means:
>
> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*See Plaintiffs' Motion for Summary Judgment,* **Ex. 5** p. Z 000336 (03); **Ex. 6** Z 000460 (04); **Ex. 7** Z000588 (05); **Ex. 8** Z 000730-31 (06); **Ex. 9** p. Z 000874-75 (07); **Ex. 10** p. Z 001033-34 (08).

Defective construction constitutes an "occurrence" so long as the damage was not intended and the "property damage" is not to the work of the insured or is to the insured's non-defective work. ***Greystone v. Natl'l Fire & Marine Ins. Co.***, 661 F.3d 1272, 1284 (10th Cir. 2011). Thus, all that needs to be shown is that as a result of an "occurrence" (Hall-Irwin's defective construction) a piece of tangible property not physically injured (the McWilliams' lot) suffered a loss of use.

As outlined in the Plaintiffs' Motion for Summary Judgment, Hall-Irwin placed the unstable soil on the lots and completed this work in October 2003. Because the policies

7

deem loss of use to occur at the time of the "occurrence," AZIC is the only primary carrier on the risk in October 2003.

**C.     Defendants Misstate the Law on the Duty to Indemnify**

Defendants incorrectly argue that Plaintiffs have the burden to prove Hall Irwin's negligence and damages flowing from Hall-Irwin's work.  That is, Defendants seem to believe that they can re-litigate whether the claims and damages are actually covered under their respective policies.  This is not the case.  In determining whether the Defendants owe indemnification for the settlements, the inquiry is limited to whether the settlements were reasonable based on the facts and discovery known by the Plaintiffs at the time of each settlement.

Defendants also take exception to "unverified" expert reports attached to Plaintiffs' motion for summary judgment.  The referenced expert reports were not used as primary evidence in this declaratory judgment action but instead used to demonstrate the reasonableness of the settlements.  Accordingly, the expert reports did not need to be verified as they were disclosed in the underlying actions and used by Plaintiffs in evaluating and settling each of the four lawsuits.

The determination of the reasonableness of an underlying settlement for purposes of indemnification is limited to an examination of "the facts known to [the policyholder] *at the time of settlement.*"  **Luria Bros. Inc. v. Alliance Assur. Co. Ltd.,** 780 F.2d 1082, 1091 (2nd Cir. 1986) (emphasis added).  Specifically, whether (i) a potential liability existed at that time and (ii) the settlement amount was reasonable in light of the probability and magnitude of the possible judgment against the policyholder.

The scope of the evidence relevant to determine whether the insurer must indemnify an underlying settlement is similarly limited to the facts and discovery existing as of the time of settlement, even where the reasonableness of the settlement is not at issue. See ***House of Clean, Inc. v. St. Paul Fire & Marine Ins. Co.***, 775 F. Supp. 2d 302, 310 (D. Mass. 2011); ***Travelers Indem. Co. of Ill. v. Royal Oak Enters., Inc.***, 344 F. Supp. 2d 1358, 1366 (M.D. Fla. 2004), *aff'd*, 171 F. App'x 831 (11th Cir. 2006); ***Cyprus Amax Minerals Co. v. Lexington Ins. Co.***, 74 P.3d 294, 301-02 (Colo. 2003).

On June 5, 2013, a Boulder County District Court entered an order on this very issue, which is attached as **Exhibit 31**. In ruling that the scope of the trial will be limited to whether the settlement amounts were reasonable, the court quoted a widely known and respected authority in the field – Allen D. Windt, *Insurance Claims and Disputes: Representation of Insurance Companies & Insureds*, § 6:31:

> Following a settlement as to which the insurer denies coverage, the existence of coverage should depend on what claims were settled; that is, it should depend on why the money was paid. The actual merit of each of the plaintiff's claims against the insured is not directly relevant. The only question should be how the parties to the settlement viewed the relative merits of the plaintiff's claims at the time of the settlement and whether, if the insured settled without the carrier's approval, the settlement amount was reasonable. Neither the insurer nor the insured should be allowed to try the plaintiff's claim in the coverage suit. The insurer should not, however, be bound by how the settlement is allocated by the insured/claimant or by what the agreement states is the reason the settlement money was paid,

**Exhibit 31**, *p. 3.*

As to allocation, the settlement amounts being sought in this action are not for the entire amount of the settlements. The total amount of all the settlements was much higher than the payments made by Plaintiffs, i.e., other potentially responsible parties paid their respective share of the overall liability to the homeowners. In fact, the Plaintiffs' settlement

9

contributions are only approximately 20% of the potential liability in each case. Accordingly, contrary to Defendants' arguments, other parties' respective liabilities have already been accounted for and paid by those parties which are not being claimed here.

The amounts being claimed in this action are those amounts paid by Bison Ridge based on facts known to the Plaintiffs at the time of each settlement in light of the probability and magnitude of the possible judgment against Bison Ridge that "arise out of" Hall-Irwin's work or were caused "in whole or in part by" Hall-Irwin's "acts or omissions." The facts developed in the underlying cases included: (1) Hall-Irwin did not bench steep fills, (2) Hall-Irwin did not inquire how to place fills over five feet deep, (3) and Hall-Irwin did not meet the moisture and compaction requirements. The allegations against Bison Ridge were all related to the dirt work, which was placed exclusively by Hall-Irwin.

## CONCLUSION

After all of the cases were settled and this lawsuit was filed, Defendants finally admitted they had a duty to defend and agreed to pay their pro rata share. Their pro rata share is 100% of the defense costs as the American Family policies are excess to the Defendants' policies. As the excess carrier, American Family did not have a duty to defend.

As to indemnification, the Plaintiffs' settlements in each case were reasonable based on the facts known at the time of settlement and the potential liability facing Bison Ridge arising out dirt work done exclusively by Hall-Irwin and based on Hall-Irwin's acts or omissions in performing its work for Bison Ridge. Accordingly, the Defendants' are required to reimburse Plaintiffs' for all the settlement amounts.

Respectfully submitted,

*s/Jon F. Sands*
Jon F. Sands, #10680
Melissa C. Collins, #34285
Sweetbaum Sands Anderson PC
1125 Seventeenth Street, Suite 2100
Denver, Colorado 80202
Phone: (303) 296-3377
Fax: (303) 296-7343
jsands@sweetbaumsands.com
mcollins@sweetbaumsands.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

jyoung@mdmc-lawco.com
tjaworsky@mdmc-lawco.com

*s/Jon F. Sands*
Jon F. Sands, #10680
Melissa C. Collins, #34285
Sweetbaum Sands Anderson PC
1125 Seventeenth Street, Suite 2100
Denver, Colorado 80202
Phone: (303) 296-3377
Fax: (303) 296-7343
jsands@sweetbaumsands.com
mcollins@sweetbaumsands.com